UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:20-CV-00168-GNS-HBB

MARK BRACKETT et al.                                                    PLAINTIFFS

v.

COLUMBIA GULF TRANSMISSION, LLC et al.                       DEFENDANTS

**<u>MEMORANDUM OPINION AND ORDER</u>**

This matter is before the Court on Defendants' Partial Motion to Dismiss or, in the

Alternative, Motion for Partial Summary Judgment (DN 70), Defendants' Motion for Partial

Summary Judgment (DN 71), Plaintiffs' Motion for Leave to File a Sur-Reply (DN 82),

Defendants' Motion to Exclude Plaintiffs' Expert Erin Haynes (DN 84), and Defendants'

Motions in Lim. (DN 90-93). The motions are ripe for adjudication.

## I.    <u>BACKGROUND</u>

Plaintiffs Mark and Deborah Brackett (the "Bracketts") and Doug Coomer ("Coomer")

(collectively "Plaintiffs") own properties in Clementsville, Kentucky. (M. Brackett Decl. ¶ 1,

DN 75-1; D. Brackett Decl. ¶ 1, DN 75-2; Coomer Decl. ¶ 1, DN 75-3). Defendant Columbia

Gulf Transmission, LLC owns a natural gas compressor station[1] (the "Compressor Station")

adjacent to Plaintiffs' properties. (Alonzo Decl. ¶ 12, DN 71-1; Pls.' Resp. Defs.' Mot. Partial

Summ. J. 3, DN 75 (map illustrating the location of the Compressor Station relative to Plaintiffs'

properties). The Compressor Station was originally authorized in 1953 by a certificate of public

---

[1] Compressor stations are placed along natural gas pipelines to keep the natural gas pressurized
and moving through the pipeline. *Understanding Natural Gas Compressor Stations*, PennState
Extension, https://extension.psu.edu/understanding-natural-gas-compressor-stations (last visited
June 27, 2024).

convenience from the Federal Power Commission, predecessor to the Federal Energy Regulatory Commission ("FERC").  (Alonzo Decl. ¶ 14); *In re Gulf Interstate Gas Co.*, 12 F.P.C. 116, 129 (1953).  Plaintiffs allege that since early September 2019, the Compressor Station has been emitting intolerable noise like "jet engines taking off" and exhaust odors that make breathing painful and cause headaches, and because of those conditions they have been distressed and unable to enjoy their properties.  (M. Brackett Decl. ¶¶ 3-6; D. Brackett Decl. ¶¶ 3-6; Coomer Decl. ¶¶ 3-4).

Plaintiffs sued Colombia Gulf Transmission, LLC, along with its parent company TC Energy and two of TC Energy's other subsidiaries, TransCanada USA Services Inc. and TransCanada Pipeline USA LTD, (collectively "Defendants") in Casey Circuit Court (Kentucky).  (Alonzo Decl. ¶ 5; Answer ¶ 7, DN 21; Notice Removal Ex. A, at 1-2, DN 1-1). Plaintiffs assert various Kentucky state law tort claims regarding the noise, vibrations, and odor allegedly from the Compressor Station, and they seek damages, injunctive relief, and declaratory relief.  (Am. Compl. ¶¶ 21-99, DN 20).  The tort claims include public and private nuisance, trespass, and negligence.  (Am. Compl. ¶¶ 21-62).  Defendants timely removed the action, and this Court has subject matter jurisdiction based on diversity of citizenship.  (Notice Removal ¶¶ 6-31); 28 U.S.C. § 1332(a).

## II.      DISCUSSION

### A.      Defendants' Partial Motion to Dismiss or, in the Alternative, Motion for Partial Summary Judgment (DN 70)

#### 1.      *Subject Matter Jurisdiction*

Defendants move to dismiss Plaintiffs' tort claims to the extent they are based on the noise and vibrations allegedly from the Compressor Station.  (*See* Defs.' Partial Mot. Dismiss 1, DN 70).  Defendants contend that Compressor Station noise levels are regulated by the Federal

Energy Regulatory Commission ("FERC"), so this Court does not have subject matter jurisdiction over the claims and Plaintiffs must instead complain to FERC, which has exclusive jurisdiction.  (Defs.' Partial Mot. Dismiss 1, 15).

### a.    Standard of Review

"Rule 12(b)(1) motions to dismiss for lack of subject-matter jurisdiction generally come in two varieties: a facial attack or a factual attack."  *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007) (citation omitted).  Facial attacks require the district court to accept factual allegations in the complaint as true, while factual attacks do not. *Id.* (citation omitted).  To address a factual attack, a district court may allow "affidavits, documents, and even a limited evidentiary hearing to resolve jurisdictional facts."  *Id.* (citations omitted).

### b.    Analysis

The Natural Gas Act ("NGA") requires a natural gas company to obtain a certificate of public convenience from FERC before building or operating a compressor station, and FERC regulates acceptable noise levels for compressor stations and other natural gas facilities.  *See* 15 U.S.C. §§ 717a, 717f(c), 717w; 42 U.S.C. §§ 7171-72; 18 C.F.R. § 157.206.  FERC has the "exclusive authority" to approve or deny certificate applications, and challengers must request a rehearing from FERC before they can appeal the decision to a United States Court of Appeals, which has exclusive jurisdiction to review the order.  15 U.S.C. §§ 717b(e), 717r(a)-(b). Challengers may not bring claims against the natural gas company in a state court or a federal district court that amount to a collateral attack on the FERC certificate or order.  *Am. Energy Corp. v. Rockies Express Pipeline LLC*, 622 F.3d 602, 605 (6th Cir. 2010).

Defendants argue that because FERC regulates noise levels, Plaintiffs may not assert their state law tort claims in this Court and that they must instead exhaust their administrative remedies by complaining to FERC and appealing any decision it makes to a United States Court of Appeals.  (Defs.' Partial Mot. Dismiss 10-11).  Defendants further maintain that Plaintiffs' claims are an impermissible collateral attack on the FERC certificate.  (Defs.' Partial Mot. Dismiss 12).

Defendants do not cite any binding cases supporting their contention that Plaintiffs must pursue remedies for their state law tort claims through FERC's administrative processes.[2]  (*See* Defs.' Partial Mot. Dismiss 1-12; Defs.' Reply Partial Mot. Dismiss 1-9, DN 77).  They instead support their arguments with several cases concerning plaintiffs who were required to exhaust their remedies with FERC because they were plainly attempting to prevent defendants from constructing or operating despite FERC authorizing those actions.  *See Adorers of the Blood of Christ v. FERC*, 897 F.3d 187, 190-93 (3d Cir. 2018) (holding that a religious group could not use the Religious Freedom Restoration Act to prevent a natural gas company with a FERC certificate from constructing a pipeline through its land); *Berkley v. Mountain Valley Pipeline,*

---

[2] Indeed, the only case Defendants cite supporting that proposition is *Blake v. Columbia Gas Transmission, LLC*, No. 3:19-0847, 2021 WL 951705 (S.D.W. Va. Mar. 12, 2021), which they argue is indistinguishable from this case and requires a ruling in their favor.  (*See, e.g.*, Defs.' Partial Mot. Dismiss 10-11; Defs.' Reply Partial Mot. Dismiss 8).  There, the court granted Columbia Gas Transmission's motion to dismiss the landowner plaintiffs' common law nuisance claims based on subject matter jurisdiction, accepting the same argument Defendants raise in this case.  *Blake*, 2021 WL 951705, at *3.  The *Blake* court held that "[i]f [p]laintiffs believe the noise level established by the Certificates is too high, then [p]laintiffs' remedy lies with exercising their rights through the administrative process, not by bringing an action in the district court[,]" but the court cited no supporting authority nor did it address whether FERC can award damages for state law tort claims.  *Id.* at *3.  Cases with similar claims to Plaintiffs' have proceeded in other courts.  *See, e.g.*, *Crosstex N. Tex. Pipeline, L.P. v. Gardiner*, 505 S.W.3d 580, 612 (Tex. 2016); *Nat. Gas Pipeline Co. of Am. v. Justiss*, 397 S.W.3d 150, 153 (Tex. 2012); *Ginardi v. Frontier Gas Servs. LLC*, No. 4:11CV00420-BRW, 2011 WL 3493125, at *3 (E.D. Ark. Aug. 10, 2011).

*LLC*, 896 F.3d 624, 632 (4th Cir. 2018) (holding that landowners along the planned path of a natural gas pipeline could not challenge the constitutionality of the Natural Gas Act because it was "the means by which they seek to vacate the granting of the Certificate"); *Otwell v. Ala. Power Co.*, 747 F.3d 1275, 1282 (11th Cir. 2014) (holding that landowners on a lake that a power company had a FERC certificate to use for cooling could not challenge the lake's water levels because FERC had already considered and rejected their concerns).

Defendants suggest that like those cases, Plaintiffs' claims collaterally attack the FERC certificate because they essentially seek to impose a different noise level than required by FERC. *See* Defs.' Partial Mot. Dismiss 12; Defs.' Reply Partial Mot. Dismiss 9). Plaintiffs insist that they are not challenging the certificate or Defendants' right to operate their facility, but alongside their requests for damages for lost enjoyment of their property, the Complaint also requests that Defendants be enjoined from operating "without adequate noise, vibration, and odor controls." (Pls.' Resp. Defs.' Partial Mot. Dismiss 14, DN 74; Am. Compl. ¶ 99).

The Sixth Circuit's opinion in *American Energy Corp.* is instructive. There, a coal company brought a state law action to prevent a natural gas company from building a natural gas pipeline above its mine because of safety concerns and to recover tort damages from the pipeline's construction. *Am. Energy Corp.*, 622 F.3d at 603. The Sixth Circuit held that the coal company's claims for equitable relief were an attempt to "sidestep" the NGA's exclusive jurisdiction scheme because FERC had authorized the pipeline, and only FERC could conduct a rehearing to consider the coal company's safety concerns. *Id.* at 605. Notably, the Sixth Circuit discussed the conversion claim and request for damages separately and noted that FERC did not have jurisdiction over the claim and that the NGA only gives FERC the authority to grant certificates, not to award damages. *Id.* at 606 (citing 15 U.S.C. § 717f); Midship Pipeline Co.,

LLC, 177 FERC ¶ 61,186, 62,145 (2021) (noting that FERC cannot award damages). Accordingly, FERC does not have jurisdiction over Plaintiffs' state law tort claims, and this Court will exercise subject matter jurisdiction over Plaintiffs' claims seeking damages but will not consider any request for injunctive or other equitable relief.  *See City of Port Isabel v. Brownsville Navigation Dist. of Cameron Cnty.*, No. 13-20-00479-CV, 2022 WL 17260509, at *5-6 (Tex. App. Nov. 29, 2022) (distinguishing between permissible cases where the plaintiff seeks to recover damages and cases that encroach upon exclusive jurisdiction by requesting injunctive relief).  Defendants' motion to dismiss based on subject matter jurisdiction is therefore denied.

### 2.   *Preemption*

Defendants contend that Plaintiffs' noise claims should be dismissed as preempted because the claims will either directly or indirectly impact interstate transportation of natural gas, which Congress intended to be entirely regulated by the Natural Gas Act.  (Defs.' Partial Mot. Dismiss 12).

### a.   Standard of Review[3]

Congress has the power to preempt state law under the Constitution's Supremacy Clause. *Matthews v. Centrus Energy Corp.*, 15 F.4th 714, 720 (6th Cir. 2021) (citing *McDaniel v. Upsher-Smith Lab'ys, Inc.*, 893 F.3d 941, 944 (6th Cir. 2018)).  Congress may preempt state law expressly through a preemption clause, or it may implicitly preempt state law "where the scheme of federal regulation is so pervasive as to make reasonable the inference that Congress left no

---

[3] Defendants do not specify whether their preemption argument should be analyzed under a motion to dismiss or summary judgment standard; they argue that under either standard, Plaintiffs' claims are preempted.  (Defs.' Partial Mot. Dismiss 9).  Plaintiffs insist that the summary judgment standard applies. (Pls.' Resp. Defs.' Partial Mot. Dismiss 7).  Because this is a purely legal issue, the conclusion below remains the same regardless which standard is applicable.

room for the States to supplement it[,]" which is field preemption, or "where compliance with both federal and state regulations is a physical impossibility, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress[,]" which is conflict preemption. *Id.* (quoting *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 98 (1992)). Preemption is a question of congressional intent. *Gade*, 505 U.S. at 96 (citing *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 208 (1985)). "To discern Congress' intent [the court] examine[s] the explicit statutory language and the structure and purpose of the statute." *Id.* (quoting *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 138 (1990)).

### b.    Analysis

Defendants do not explain whether they believe Plaintiffs' state law tort claims are expressly, field, or conflict preempted, nor do they explain and apply preemption standards to the structure and purpose of the NGA. (*See* Defs.' Partial Mot. Dismiss 12-14; Defs.' Reply Partial Mot. Dismiss 10-13). Instead, Defendants cite various nonbinding cases that either do not support their propositions or do not relate to this case.

Defendants argue that the NGA preempts nuisance and trespass claims based on the operation of a compressor station.[4] (Defs.' Partial Mot. Dismiss 13 n.8 (citing *Columbia Gas Transmission Corp. v. An Exclusive Nat. Gas Storage Easement in Clinton Subterranean Geological Formation Beneath 80 Acres, Worthington Twp., Richland Cnty.*, 747 F. Supp. 401 (N.D. Ohio 1990); *Otwell v. Ala. Power Co.*, 944 F. Supp. 2d 1134 (N.D. Ala. 2013), *aff'd*, 747 F.3d 1275 (11th Cir. 2014); *Hartley v. Centerpoint Energy Gas Transmission Co.*, No. CIV-09-067-KEW, 2010 WL 322069 (E.D. Okla. Jan. 27, 2010)). In *Columbia Gas Transmission Corp.*,

---

[4] This argument appears in a footnote after a section explaining that the NGA preempts state regulation of the interstate transportation of natural gas. (*See* Defs.' Partial Mot. Dismiss 12-13). Defendants do not argue that any state regulations are at issue in this case. (*See* Defs.' Partial Mot. Dismiss; Defs.' Reply Partial Mot. Dismiss).

the natural gas company sued private landowners under the Natural Gas Act to condemn land upon which the company had a FERC certificate to operate natural gas facilities. *Columbia Gas Transmission Corp.*, 747 F. Supp. at 402. The landowners countersued for trespass, which the court held was preempted by Columbia Gas's eminent domain powers, but such powers are not implicated by Plaintiffs' claims in this case. *Id.* at 402, 404-05; (*see* Am. Compl. ¶¶ 39-46).

Defendants' remaining citations do not support the dismissal of Plaintiffs' claims based on preemption; they relate to what Plaintiffs may be required to prove to prevail on some of their claims. In *Hartley*, the court did not dismiss the plaintiff's private nuisance claim as preempted by the NGA. *Hartley*, 2010 WL 322069, at *4. Rather, it granted summary judgment on the claim because the plaintiff was required to but failed to prove that the compressor station did not comply with FERC's regulations. *Hartley*, 2010 WL 322069, at *4. Similarly, in *Otwell*, lake-adjacent landowners alleged that the defendant power company was misusing the lake's waters, violating the landowners' riparian water rights and creating a nuisance. *Otwell*, 944 F. Supp. 2d at 1143-44. The district court granted summary judgment on the claims because the landowners were seeking injunctive relief based on concerns FERC had already rejected and were seeking damages for actions that FERC had authorized. *Id.* at 1152-55. Defendants do not present any argument regarding whether Plaintiffs must or can prove that the Compressor Station does not meet FERC's requirements to prevail on their various Kentucky common law claims.[5] (*See* Defs.' Partial Mot. Dismiss 10-15; Defs.' Reply Partial Mot. Dismiss 10-14). To the contrary,

---

[5] Defendants state in a footnote that Plaintiffs cannot prove that the Compressor Station has "violated its certificates" because Plaintiffs' noise expert Bennett Brooks allegedly does not mention FERC or opine that the Compressor Station is violating FERC's requirements. (Defs.' Partial Mot. Dismiss 7-8 n.6). Because this issue has not been adequately briefed by the parties, the Court declines to consider it at this stage. *See Magnum Towing & Recovery v. City of Toledo*, 287 F. App'x 442, 449 (6th Cir. 2008) (citation omitted); *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (citation omitted).

Defendants insist that that the compressor units at issue are exempt from FERC's noise limitation. (Defs.' Partial Mot. Dismiss 4-5; Defs.' Reply Partial Mot. Dismiss 2).[6]

Defendants' citations regarding Plaintiffs' negligence claims are inapposite for the same reason. *Simmons v. Sabine River Auth. La.*, 732 F.3d 469, 476 (5th Cir. 2013) (affirming the dismissal of the plaintiffs' negligence claims because "Plaintiffs allege that Defendants were negligent because they failed to act in a manner FERC had expressly declined to require."); *Sanders v. Duke Energy Carolinas, LLC*, No. 3:20-CV-00215-KDB-DSC, 2022 WL 282567, at *6 (W.D.N.C. Jan. 31, 2022) (noting that FERC regulations set the standard of care for a negligence claim based on flooding from a hydroelectric dam but allowing the claim to proceed); *Carrington v. City of Tacoma, Dep't of Pub. Utils., Light Div.*, 276 F. Supp. 3d 1035, 1045 (W.D. Wash. 2017) (dismissing negligence and other state law tort claims because the plaintiffs sought damages for the defendant's FERC-authorized activities). Accordingly, Defendants' motion is denied, and Plaintiffs' state law tort claims may proceed.

### B.    Plaintiffs' Motion for Leave to File a Sur-Reply (DN 82)

Plaintiffs move for leave to file a sur-reply, contending that Defendants raised new arguments in their reply when discussing the 18 C.F.R. § 385.206(a) complaint procedure because they did not mention that specific administrative process in their motion to dismiss. (*See* Pls.' Mot. Leave File Sur-Reply 3, DN 82).

---

[6] Defendants contend that 18 C.F.R. § 385.206(a), which contains a complaint procedure for violations of "any statute, rule, order, or other law administered by [FERC]," is the proper method for Plaintiffs to claim that the Compressor Station does not meet FERC's noise requirements. (Defs.' Reply Partial Mot. Dismiss 6-7). As discussed above, however, it is unclear at this stage whether Plaintiffs' claims in this case require proof of noncompliance with the certificate, and Defendants insist that the Compressor Station is exempt from FERC's noise limitation. *See* 18 C.F.R. § 385.206(a); (Defs.' Partial Mot. Dismiss 4-5; Defs.' Reply Partial Mot. Dismiss 2).

"Generally speaking, sur-replies are 'highly disfavored, as they usually are a strategic effort by the nonmoving party to have the last word on a matter." *Crenshaw v. Portfolio Recovery Assocs., LLC*, 433 F. Supp. 3d 1057, 1063 (W.D. Ky. 2020) (citation omitted).  Sur-replies may be permissible, however, such as "[w]hen new submissions and/or arguments are included in a reply brief, and a nonmovant's ability to respond to the new evidence has been vitiated." *Key v. Shelby Cnty.*, 551 F. App'x 262, 265 (6th Cir. 2014) (alteration in original) (quoting *Seay v. Tenn. Valley Auth.*, 339 F.3d 454, 481 (6th Cir. 2003)).

Here, Defendants' mention of 18 C.F.R. § 385.206(a) was not a new argument; rather, it responded to Plaintiffs' position that they could not have administratively challenged the Compressor Station's FERC certificate.  (*See* Defs.' Reply Partial Mot. Dismiss 3, 5-6; Pls.' Resp. Partial Mot. Dismiss 9-12).  Plaintiffs' motion for leave is therefore denied.  *See Crenshaw*, 433 F. Supp. 3d at 1063; *Key*, 551 F. App'x at 264-65.

### C.    Defendants' Motion to Exclude Plaintiffs' Expert Erin Haynes (DN 84)

Plaintiffs' state law tort claims are also based on the odors and pollutants allegedly emanating from the Compressor Station.  (Am. Compl. ¶¶ 21-93).  Plaintiffs have disclosed Dr. Erin Haynes ("Dr. Haynes") as an expert who has analyzed air quality data collected by a monitor inside the Bracketts' home from April 2022 to October 2022.  (Haynes Report 1, DN 88-3; M. Brackett Decl. ¶ 8).  Defendants seek to exclude Dr. Haynes' testimony based on lack of compliance with Fed. R. Civ. P. 26(a)(2)(B), relevance, and reliability.  (Defs.' Mot. Exclude Haynes 2, DN 84).

#### 1.    *Compliance with Rule 26(a)(2)(B)*

Fed. R. Civ. P. 26(a)(2)(B) requires a witness "retained or specially employed to provide expert testimony in the case" to provide a report that contains the following:

> (i)      a complete statement of all opinions the witness will express and the basis and reasons for them;
>
> (ii)     the facts or data considered by the witness in forming them;
>
> (iii)    any exhibits that will be used to summarize or support them;
>
> (iv)    the witness's qualifications, including a list of all publications authored in the previous 10 years;
>
> (v)     a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
>
> (vi)    a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B).  If a party does not meet these requirements, "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).  The Plaintiffs bear the burden to prove that any omissions are harmless.  *See R.C. Olmstead, Inc., v. CU Interface, LLC*, 606 F.3d 262, 272 (6th Cir. 2010).   To determine whether a failure to disclose is harmless, courts consider:

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*Bisig v. Time Warner Cable, Inc.*, 940 F.3d 205, 219 (6th Cir. 2019) (quoting *Howe v. City of Akron*, 801 F.3d 718, 748 (6th Cir. 2015)).

Defendants contend that Dr. Haynes' testimony should be excluded because her report does not include a list of cases in which she has testified in the last four years nor her compensation for this case.  (Defs.' Mot. Exclude Haynes 2-3).  Plaintiffs admit that Dr. Haynes' report does not contain statements about prior testimony or compensation, but they explain that they did not include them because Dr. Haynes has not testified in the past four years and she will not be compensated for her testimony in this case.  (Pls.' Resp. Defs.' Mot. Exclude Haynes 2, DN 88; Haynes Decl. ¶¶ 2-3, DN 88-1).

11

It is unclear whether Rule 26(a)(2)(B) requires Plaintiffs to disclose that Dr. Haynes has not testified in the past four years and that there is no "compensation to be paid" for her testimony.  *See* Fed. R. Civ. P. 26(a)(2)(B).   Even if Plaintiffs' omissions violate Rule 26(a)(2)(B), application of the *Howe* factors shows that they are harmless.   The purpose of disclosing cases in which the expert has testified is to allow opposing counsel to prepare to cross-examine the expert about prior testimony that could be helpful or harmful to their case.   *In re Ohio Execution Protocol Litig.*, No. 2:11-CV-1016, 2019 WL 4024765, at *3 (S.D. Ohio Aug. 27, 2019).   Similarly, parties use information about compensation to question the expert about potential bias.   *Porter ex rel. Porter v. Hamilton Beach/Proctor Silex, Inc.*, No. 01-2970-MAV, 2003 WL 22385679, at *1 (W.D. Tenn. Aug. 27, 2003) (citation omitted).   Because there was not any prior testimony or compensation to disclose, Defendants cannot be said to have been surprised by the omission, nor will it disrupt the case's progression toward trial.   *See Little v. City of Morristown*, No. 2:21-CV-00047-DCLC-CRW, 2023 WL 2769446, at *4 (E.D. Tenn. Mar. 31, 2023) (noting that omitting a list of publications was substantially justified where the expert had not authored anything in the past ten years and that omitting the list of prior testimony was harmless where the expert had only testified in one other case).   Dr. Haynes' testimony is important to Plaintiffs' case because she will testify regarding the air quality in the Bracketts' home, which relates to their odor and pollution allegations.  (*See* Haynes Report 1; Am. Compl. ¶¶ 21-93).  Plaintiffs explained that they did not disclose that Dr. Haynes has not testified in the past four years and that she is not being compensated because there was no need to disclose information that did not exist.  (Pls.' Resp. Defs.' Mot. Exclude Haynes 2).   This choice is understandable and did not prejudice Defendants.  *See Little*, 2023 WL 2769446, at *4.

The only factor that weighs in Defendants' favor is the ability to cure because Defendants should not be expected to ask Plaintiffs if they purposely or accidentally omitted information. *Tovey v. Nike, Inc.*, No. 1:12CV448, 2014 WL 3510636, at *17 (N.D. Ohio July 10, 2014) ("Plaintiff's arguments miss the point of the Rule 26(a)(2)(B) disclosures, which is to 'minimize the expense of deposing experts, and to shorten direct examination and to prevent an ambush at trial.'" (quoting *McCoy v. Whirlpool Corp.*, 214 F.R.D. 646, 652 (D. Kan. 2003))). Indeed, this is the only factor Defendants dispute in reply to Plaintiffs' argument that the omission was harmless; they do not argue that the omission harmed or surprised them. (*See* Defs.' Reply Mot. Exclude Haynes 2 n.1, DN 89). Accordingly, the omission appears to have been an "'honest,' harmless mistake" and not "'underhanded gamesmanship' that warrants the harsh remedy of exclusion." *Bisig*, 940 F.3d at 219 (quoting *Bentley v. Highlands Hosp. Corp.*, No. 15-97-ART-EBA, 2016 WL 5867496, at *10 (E.D. Ky. Oct. 6, 2016)).[7]

### 2. *Relevance*

Under Fed. R. Evid. 702, expert testimony is only admissible if the proponent proves that it is more likely than not that, *inter alia*, it is relevant, or "will help the trier of fact to understand the evidence or to determine a fact in issue . . . ." In other words, the testimony must "fit" the

---

[7] Relatedly, Defendants briefly express concern with the opinions Dr. Haynes disclosed in her report. (*See* Defs.' Reply Mot. Exclude Haynes 5-6, 5 n.4). In an answer to an interrogatory from before they submitted Dr. Haynes' report, Plaintiffs noted that "[she] is also expected to testify to the known impacts of air emissions from natural gas compressor stations on human health[,]" but her report did not disclose that opinion. (Pls.' Resp. Defs.' Mot. Exclude Haynes Ex. C, at 9-10, DN 88-4; *see* Haynes Report 1-2). Ordinarily, "courts should not permit experts to testify as to a wholly new, previously unexpressed opinion." *E.E.O.C. v. Tepro, Inc.*, 133 F. Supp. 3d 1034, 1049 (E.D. Tenn. 2015) (quoting *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 45 F. Supp. 3d 724, 760 (N.D. Ohio 2014)). It is unclear, however, whether Dr. Haynes actually intends to testify about the health impacts of emissions from compressor stations because her expected testimony between the interrogatory and her report could have changed, and the omission from the report could have been intentional. Accordingly, the Court declines to address this concern at this stage.

facts of the case; the Rule "requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591-92 (1993). "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Madej v. Maiden*, 951 F.3d 364, 370 (6th Cir. 2020) (quoting *Daubert*, 509 U.S. at 591).

Dr. Haynes' report explains that the Bracketts installed an air quality monitor in their home, which summarizes the air quality data, lists the detected levels of volatile organic compounds ("VOCs"), and notes which levels "exceeded the level of concern." (Haynes Report 1). From that data, Dr. Haynes determined that the VOC levels "would have likely been detected by the human nose/smell" and that they "could also result in headache, dizziness, and eye, nose, and throat irritation." (Haynes Report 1).

Defendants argue that Dr. Haynes' testimony should be excluded because VOCs can be caused by many items, including household products and appliances, so Dr. Haynes' testimony is not helpful to the jury because it does not explain the origin of the VOCs inside the Bracketts' home.[8] (Defs.' Mot. Exclude Haynes 3-5). Defendants' argument challenges the weight of Dr. Haynes' testimony rather than its relevance. Dr. Haynes' testimony will explain and analyze the air quality in the Bracketts' home, which indisputably relates to their pollution and odor claims. (*See* Haynes Report 1; Am. Compl. ¶¶ 21-93). That her testimony may not prove other aspects of Plaintiffs' claims is not a valid basis to exclude it as irrelevant. *Phx. Process Equip. Co. v. Cap. Equip. & Trading Corp.*, 624 F. Supp. 3d 808, 819 (W.D. Ky. 2022) (rejecting a relevance

---

[8] Defendants similarly argue that Dr. Haynes cannot testify regarding causation because she does not offer any opinions on causation in her report. (Defs.' Mot. Exclude Haynes 4). Plaintiffs acknowledge that Dr. Haynes will not testify to causation. (Pls.' Resp. Defs.' Mot. Exclude Haynes 5).

argument that sought to attack the weight of the evidence because cross-examination is the appropriate method to do so).

### 3.     *Reliability*

Fed. R. Evid. 702 also requires expert testimony to be based on "reliable principles and methods . . . ." "[R]ejection of expert testimony is the exception, rather than the rule," and "[a]ny doubts regarding the admissibility of an expert's testimony should be resolved in favor of admissibility." *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 530 (6th Cir. 2008) (citation omitted); *In re E. I. Du Pont De Nemours & Co. C-8 Pers. Inj. Litig.*, 337 F. Supp. 3d 728, 739 (S.D. Ohio 2015).

Defendants attack Dr. Haynes' methodology by noting that she did not visit the Compressor Station or Plaintiffs' properties, set up the air quality monitor, or collect the data.[9] (Defs.' Mot. Exclude Haynes 3-4; Defs.' Reply Mot. Exclude Haynes 7-8).   None of these concerns require exclusion.  "Experts are permitted a wide latitude in their opinions, including those not based on firsthand knowledge, so long as 'the expert's opinion [has] a reliable basis in the knowledge and experience of the discipline.'" *Jahn v. Equine Servs., PSC*, 233 F.3d 382, 388 (6th Cir. 2000) (alteration in original) (quoting *Daubert*, 509 U.S. at 594-95); *see also* Fed. R. Evid. 703 ("An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed.").  Indeed, experts may rely on data that they did not personally collect. *See Little Hocking Water Ass'n, Inc. v. E.I. du Pont de Nemours & Co.*, 90 F. Supp. 3d 746, 767 (S.D. Ohio 2015) (admitting expert testimony based on data collected by a

---

[9] Defendants' reply contains additional arguments that they failed to raise in their motion, which will not be considered.  (Defs.' Reply Mot. Exclude Haynes 4-7).  *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008) ("Raising the issue for the first time in a reply brief does not suffice; reply briefs *reply* to arguments made in the response brief—they do not provide the moving party with a new opportunity to present yet another issue for the court's consideration." (quoting *Novosteel SA v. United States*, 284 F.3d 1261, 1274 (Fed. Cir. 2002))).

different expert); *Fed.-Mogul Corp. v. Ins. Co. of Pa.*, No. 12-12005, 2016 WL 4486996, at *4 (E.D. Mich. Aug. 26, 2016) (admitting expert testimony based on already-published data).

Defendants contend that Dr. Haynes' reliance on the air quality monitor is inappropriate because she does not appear to be familiar with it, whether it is accurate, or whether the Bracketts operated it properly. (Defs.' Reply Mot. Exclude Haynes 8). Dr. Haynes' report, however, explains what the monitor is, how it measures VOCs, and where the Bracketts installed it. (Haynes Report 1). Defendants may challenge the resulting data through cross-examination. *See Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").

### D.     Defendants' Motion for Partial Summary Judgment (DN 71)

Plaintiffs assert the following claims against Defendants regarding the noise, odors, and pollutants allegedly emanating from the Compressor Station: private and public nuisance (Counts I and II), trespass (Count III), negligence (Count IV), negligence per se (Count V),[10] battery (Count VI), strict liability (Count VII), vicarious liability (Count VIII),[11] intentional and

---

[10] Defendants did not move for summary judgment on Plaintiffs' negligence per se claim because they argue that it is based only on excessive noise, which they addressed in their motion to dismiss. (Defs.' Mot. Partial Summ. J. 5 n.5, DN 71). Accordingly, because the motion to dismiss is denied as explained above, the negligence per se claim may proceed.

[11] Vicarious liability is not a cause of action, so Count VIII is dismissed, but to the extent it is relevant to their claims, Plaintiffs may still proceed under a theory of vicarious liability. *O'Bryan v. Holy See*, 556 F.3d 361, 370 (6th Cir. 2009) ("[*R*]*espondeat superior* is not a cause of action. It is a basis for holding the [defendant] responsible for the acts of its agents. Thus, *respondeat superior* will factor in to our discussion of the other claims advanced by plaintiffs but will not be treated separately."); *see also Jones v. Progressive Cas. Ins. Co.*, No. 6:18-CV-21-REW-HAI, 2019 WL 4684459, at *15 (E.D. Ky. Sept. 24, 2019) (dismissing vicarious liability as a cause of action).

negligent infliction of emotional distress (Counts IX and X), and punitive damages (Count XI).[12] Defendants move for summary judgment on Plaintiffs' claims to the extent they are based on pollution and odor.  (Defs' Mot. Partial Summ. J. 1).

### 1.   *Standard of Review*

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party moving for summary judgment bears the burden of demonstrating that there are no genuine issues of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party meets that burden, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial,'" which requires more than "some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (citations omitted).  The court must consider the evidence "in a light most favorable" to the nonmoving party and give that party "the benefit of all reasonable inferences."  *Baker v. City of Trenton*, 936 F.3d 523, 529 (6th Cir. 2019) (citing *Smith Wholesale Co. v. R.J. Reynolds Tobacco Co.*, 477 F.3d 854, 861 (6th Cir. 2007)).  There must be sufficient evidence for a jury to reasonably find for the plaintiff; "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient . . . ."  *Matsushita Elec. Indus. Co.*, 475 U.S. at 586-87 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

---

[12] A request for punitive damages is not a cause of action, so Count XI is dismissed, but Plaintiffs may still pursue punitive damages as a remedy.  *See Pike v. Hardin Cnty. Water Dist. No. 2*, No. 3:23-CV-42-DJH-RSE, 2024 WL 1199439, at *5 (W.D. Ky. Mar. 20, 2024) (citing *Dalton v. Animas Corp.*, 913 F. Supp. 2d 370, 378 (W.D. Ky. 2012) (dismissing a claim for punitive damages but noting that "[t]his dismissal does not preclude [the plaintiff] from recovering punitive damages if the evidence ultimately warrants such a remedy.").

2. ***Analysis***

a. **Causation**

Defendants' primary argument is that every claim must fail because Plaintiffs cannot prove that the Compressor Station is the source of the alleged odor or pollutants. (Defs.' Mot. Partial Summ. J. 1). To support their claims, Plaintiffs attach Kentucky Department of Environmental Protection ("KYDEP") air quality inspection reports (the "KYDEP Reports") prepared by Jeffery Blakeman ("Blakeman"), an environmental scientist and investigator for KYDEP. (Pls.' Resp. Defs.' Mot. Partial Summ. J. 6-10, 12, DN 75; Pls.' Resp. Defs.' Mot. Partial Summ. J. Ex. 18, at 1, DN 75-21; Pls.' Resp. Defs.' Mot. Partial Summ. J. Ex. 20, at 1, DN 75-23). Defendants contend that the KYDEP Reports are inadmissible because Plaintiffs did not disclose an expert witness to testify to them, and even if they were admissible, they are insufficient to prove causation. (Defs.' Mot. Partial Summ. J. 8).

i. **Admissibility**

Defendants assert that the KYDEP Reports are inadmissible because they contain expert opinions, so they require expert testimony, but neither Blakeman nor any other KYDEP employee has been disclosed to testify about the contents of the reports. (Defs.' Reply Mot. Partial Summ. J. 8-9, DN 78).

Under Fed. R. Evid. 803, "regardless of whether the declarant is available to testify as a witness[,]" the following is not excluded by the hearsay rule:

A record or statement of a public office if:
(A)    it sets out: . . .
        (iii)    in a civil case or against the government in a criminal case, factual findings from a legally authorized investigation; and
(B)    the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness.

Fed. R. Evid. 803(8).   "[P]ortions of investigatory reports otherwise admissible under Rule 803(8)(C) are not inadmissible merely because they state a conclusion or opinion."   *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 170 (1988).   Additionally, because investigatory reports are presumed to be reliable, parties may only challenge their reliability under Rules 702 or 705 after showing that the report is untrustworthy.   *Melville v. Am. Home Assurance Co.*, 584 F.2d 1306, 1316 (3d Cir. 1978); *cf. Hickson Corp. v. Norfolk S. Ry. Co.*, 124 F. App'x 336, 344 (6th Cir. 2005) ("In light of this presumption of admissibility, the party opposing the admission of the report must prove that the report is not trustworthy."  (citation omitted)).

The KYDEP Reports fall under the Rule 803(8)(A)(iii) exception to hearsay, so they are admissible even if they contain Blakeman's opinions and even if he does not testify to them.   *See Gould Elecs. Inc. v. Livingston Cnty. Rd. Comm'n*, No. 17-11130, 2020 WL 6793335, at *3, *12-13 (E.D. Mich. Nov. 19, 2020), *aff'd*, No. 20-2257, 2022 WL 1467650 (6th Cir. May 10, 2022) (concluding that reports from the Michigan Department of Environmental Quality investigating the source of water contamination were 803(8)(A)(iii) records).   Defendants have not shown, nor have they argued, that the KYDEP Reports are untrustworthy, so they are presumptively admissible.   *See Mayes v. City of Hammond*, No. 2:03-CV-379-PRC, 2006 WL 2054377, at *7-8 (N.D. Ind. July 21, 2006) (allowing a plaintiff to offer, without expert testimony, a Rule 803(8) report containing expert evidence because the defendants "[did] not discharge[] their burden of demonstrating that the . . . [r]eport lacks trustworthiness").

### ii.   Proof of Causation

Defendants contend that the KYDEP Reports have no evidentiary value because "they do not allege that there were any odors on Plaintiffs' properties or allege any causal link between the Compressor Station and any odors on Plaintiffs' properties."   (Defs.' Reply Mot. Partial

Summ. J. 7). Defendants' argument is not well-taken. The KYDEP Reports demonstrate that depending on wind direction and speed, odors are detectable in the vicinity of the Compressor Station, including at or near Plaintiffs' properties, and that more than once, KYDEP notified Defendants that the odor emanating from the Compressor Station violated air quality standards. (Pls.' Resp. Defs.' Mot. Partial Summ. J. Exs. 18, 19, 21, 22, 24, 25, 27, 28, 30, 34, 35, 37, DN 75-21, 75-22, 75-24, 75-25, 75-27, 75-28, 75-30, 75-31, 75-33, 75-37, 75-38, 75-40; Defs.' Reply Mot. Partial Summ. J. Ex. 1, DN 78-1). Blakeman described the odor as "comparable to that of burning metal," which is consistent with Plaintiffs' statements that it smells like exhaust fumes. (Pls.' Resp. Defs.' Mot. Partial Summ. J. Ex. 18; M. Brackett Decl. ¶ 4; D. Brackett Decl. ¶ 4; Coomer Decl. ¶ 3). Moreover, Blakeman noted that when he visited the Compressor Station, he smelled the same odor he detected during his testing. (Pls.' Resp. Defs.' Mot. Partial Summ. J. Exs. 21, 34).

Defendants insist that *Dickens v. Oxy Vinyls, LP*, 631 F. Supp. 2d 859 (W.D. Ky. 2009), supports a ruling in their favor. (Defs.' Mot. Partial Summ. J. 7, Defs.' Reply Mot. Partial Summ. J. 4-5). There, this Court held that the plaintiffs could not support their claim that the defendant's polyvinyl chloride manufacturing plant caused a nuisance because it emitted vinyl chloride. *Dickens*, 631 F. Supp. 2d at 861-62, 866. This Court explained that while there was proof that the facility did emit vinyl chloride, there was no evidence about where the emissions went and testing showed that vinyl chloride was not present in sufficient quantities to be detectable by smell, so the plaintiffs' testimony that they recognized the odor they were smelling and knew that it came from the defendant's facility was insufficient. *Id.* at 865-66. In the present case, the KYDEP reports offer greater support for causation than the complete absence of evidence in *Dickens*. Accordingly, because Plaintiffs have offered more than a mere scintilla of

evidence supporting causation, summary judgment on that basis is denied. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 586-87 (quoting *Anderson*, 477 U.S. at 252).

### b.  Private and Public Nuisance (Counts I and II)

Defendants contend that they are entitled to summary judgment on Plaintiffs nuisance claims because "a nuisance cannot be both public and private." (Defs.' Mot. Summ. J. 6). Under Kentucky law, however, a plaintiff may proceed under either or both theories. *City of Monticello v. Rankin*, 521 S.W.2d 79, 80-81 (Ky. 1975) (concluding that private individuals may rely on public nuisance, private nuisance, or both to support their claim that a sewerage treatment plant emitted offensive odors that interfered with their quiet use and enjoyment).

Defendants also move for summary judgment on the public nuisance claim, arguing that there is no evidence that the alleged nuisance impacts the public. (Defs.' Mot. Summ. J. 6). "A public nuisance is an unreasonable interference with a right common to the general public." *Roberie v. VonBokern*, No. 2004-SC-000250-DG, 2006 WL 2454647, at *3 (Ky. Aug. 24, 2006) (quoting Restatement (Second) of Torts § 821B (Am. L. Inst. 1979)), *as modified* (Dec. 21, 2006). The affected group does not have to be an entire community as long as there is an interference with a public right, which may include "a significant interference with the public health, the public safety, the public peace, the public comfort or the public convenience." *Id.* at *3-4 (citing Restatement (Second) of Torts § 821B, cmt. g). As explained above, Plaintiffs have offered proof that the Compressor Station emanates an exhaust odor that affects, at minimum, the vicinity's public comfort, and that is sufficient for the claim to proceed. *See City of Monticello*, 521 S.W.2d at 80-81. Accordingly, Defendants' motion for summary judgment on the nuisance claims is denied.

### c.   Trespass (Count III)

Defendants argue that the trespass claim must fail because the odors are not "visibly detectable or permanent."  (Defs.' Mot. Partial Summ. J. 8).  "Kentucky law allows recovery under trespass in either of three instances:  (1) the defendant was engaged in an extra-hazardous activity, (2) the defendant committed an intentional trespass or (3) the defendant committed a negligent trespass."  *Rockwell Int'l Corp. v. Wilhite*, 143 S.W.3d 604, 619 (Ky. App. 2003) (citation omitted).  In some circumstances, plaintiffs may recover for trespass based on an invasion of invisible particles, and Defendants do not explain why that would be inappropriate here, so their motion is denied.  *See Smith v. Carbide & Chems. Corp.*, 226 S.W.3d 52, 56 (Ky. 2007) (suggesting that either intentional or negligent trespass can be based on imperceptible particles); *see also Mod. Holdings, LLC v. Corning Inc.*, No. 13-405-GFVT, 2015 WL 1481457, at *5 (E.D. Ky. Mar. 31, 2015) ("Contrary to Defendants' contentions, the fact that the chemicals were invisible and imperceptible does not, in and of itself, preclude Plaintiffs' trespass claim.").

### d.   Negligence (Counts IV)

Defendants assert that Plaintiffs cannot bring a negligence claim for damage to property because negligent damage to property is a trespass claim.  (Defs.' Mot. Partial Summ. J. 8).  Indeed, "Kentucky regards a negligence claim as a negligent trespass claim where, as here, the negligence claim merely asserts injury to real property."  *Reynolds v. Childers Oil Co.*, No. 2013-CA-000710-MR, 2014 WL 1356672, at *7 (Ky. App. Apr. 4, 2014).  In that situation, the "two claims are actually one and the same . . . ."  *Id.*  Accordingly, to the extent that Plaintiffs' negligence claim is based on injury to their properties, it is dismissed as duplicative of their trespass claim.

### e.    Battery (Count VI)

Defendants argue that Plaintiffs cannot prevail on their battery claim because Defendants did not possess the required intent.  (Defs.' Mot. Partial Summ. J. 9-10).  Under Kentucky law, a battery is "any unlawful touching of the person of another, either by the aggressor himself, or by any substance set in motion by him," and intent to make contact with the person is an essential element.  *Vitale v. Henchey*, 24 S.W.3d 651, 657-58 (Ky. 2000) (citations omitted).  "[A]ll consequences which the actor desires to bring about are intended as well as consequences that are certain or substantially certain to result from the act."  *Id.* at 657 (citation omitted).  Defendants rely on *Powell v. Tosh*, 929 F. Supp. 2d 691 (W.D. Ky. 2013), *opinion vacated in part on other grounds on recons.*, No. 5:09-CV-00121-TBR, 2013 WL 1878934 (W.D. Ky. May 3, 2013), in which this Court held that odors emanating from a hog farm could not support a battery claim where the only proof of intent was the "intentional construction and ventilation of the barns."  *Id.* at 707.  This Court explained that "[a]lthough defendants may have knowledge that odors could reach neighboring properties," that knowledge is too general to show intent.  *Id.* at 708.  Unlike in *Powell*, here, a jury could reasonably find that odors on Plaintiffs properties were substantially certain to result from the Compressor Station because, as explained above, Defendants had received multiple notices that various locations around the Compressor Station had a detectable odor, including testing sites at or near Plaintiffs' properties, and that the odor violated air quality standards more than once.  Accordingly, Defendants' motion for summary judgment regarding the battery claim is denied.

### f.    Strict Liability (Count VII)

Defendants move for summary judgment on Plaintiffs' strict liability claim, arguing that transmitting natural gas is not an ultrahazardous activity, and even if it is, it falls under

Kentucky's public function exception.  (Defs.' Mot. Partial Summ. J. 10-11).  "Strict liability for property damage only applies where the defendant engages in an ultra hazardous dangerous activity."  *Dickens*, 631 F. Supp. 2d at 863-64 (citing *Smith*, 226 S.W.3d at 55).  "An activity is ultra-hazardous if 'the very operation itself is, and is known and recognized to be, inherently dangerous at its inception.'"  *Mod. Holdings, LLC*, 2015 WL 1481457, at *7 (quoting *Randall v. Shelton*, 293 S.W.2d 559, 561 (Ky. 1956)).

Neither caselaw nor evidence in the record suggests that transporting natural gas is "known and recognized to be[] inherently dangerous at its inception[,]" so it is doubtful that Kentucky courts would deem it ultra hazardous.  *Mod. Holdings, LLC*, 2015 WL 1481457, at *7; *see Cantrell v. Marathon Ashland Pipe Line, LLC*, No. 03-298-KSF, 2005 WL 1570652, at *3 (E.D. Ky. June 30, 2005) ("As for the claim of strict liability regarding this oil leak, no Kentucky case has extended strict liability to the transmission of oil through pipelines."); *accord Smith v. Mid-Valley Pipeline Co.*, No. 3:07-CV-13-KKC, 2007 WL 1309612, at *3 (E.D. Ky. May 4, 2007).  Indeed, Plaintiffs insist that Defendants could, with reasonable effort, fix the odors emanating from the Compressor Station, which suggests that it is not inherently dangerous.  *See Mod. Holdings, LLC*, 2015 WL 1481457, at *8 (explaining that "the ability to reduce or avoid a hazard with due care" heavily factors into the strict liability analysis because it "distinguish[es] matters suited for strict liability from those better addressed by common law negligence." (citing *Ind. Harbor Belt R. Co. v. Am. Cyanamid Co.*, 916 F.2d 1174, 1177 (7th Cir. 1990))).

Regardless, if Defendants' natural gas pipeline is an ultra-hazardous activity, it falls under the public function exception.  In *Workman v. Columbia Natural Resources*, 864 F. Supp. 638 (E.D. Ky. 1994), a sister court held that strict liability did not apply to a natural gas pipeline because under Kentucky law, natural gas transmission is a public service and therefore exempt

from strict liability.  *Id.* at 642 (citing KRS 278.470), *abrogated on other grounds by James v. Meow Media, Inc.*, 300 F.3d 683 (6th Cir. 2002).   Plaintiffs insist that the public function exception should not allow Defendants a "free license to operate negligently and causing trespass simply because it is transporting natural gas."[13]   (Pls.' Resp. Mot. Partial Summ. J. 19).   Plaintiffs' argument plainly misses the point.  Plaintiffs cannot pursue relief under a theory of strict liability, but they could still recover for Defendants' alleged harms through their other claims.  Summary judgment is granted dismissing Plaintiffs' strict liability claim.

### g.  Intentional and Negligent Infliction of Emotional Distress (Counts IX and X)

Defendants move for summary judgment on Plaintiffs' intentional and negligent infliction of emotional distress claims because Plaintiffs lack medical expert testimony to support them.  (Defs.' Mot. Partial Summ. J. 11-12).   Intentional and negligent infliction of emotional distress claims both require proof of severe distress.  *See McDonald's Corp. v. Ogborn*, 309 S.W.3d 274, 294 (Ky. App. 2009) (citation omitted); *Osborne v. Keeney*, 399 S.W.3d 1, 23 (Ky. 2012).   In *Osborne*, the Kentucky Supreme Court held that claims involving emotional distress require "expert or scientific proof[] that the claimed emotional injury is severe or serious." *Osborne*, 399 S.W.3d at 6.   Somewhat recently, the Kentucky Supreme Court clarified that expert testimony is not necessary to prove emotional distress damages in every instance but that *Osborne*'s expert testimony requirement only applies to intentional and negligent infliction of

---

[13] Plaintiffs suggest that there is a distinction between harm from natural gas transportation and the byproducts of natural gas transportation without supporting citation, and the Court is not aware of any authority supporting this proposition. *See Lamb v. Martin Marietta Energy Sys.*, Inc., 835 F. Supp. 959, 960-61, 971 (W.D. Ky. 1993) (noting in dicta that the public function exception would apply to an enriched uranium plant that was allegedly contaminating the plaintiffs' soil, air, and water).

emotional distress claims. *Ind. Ins. Co. v. Demetre*, 527 S.W.3d 12, 39 (Ky. 2017). The Court

relied on a Tennessee Supreme Court case that had addressed the issue, explaining:

> On appeal, the Tennessee Supreme Court reversed, declining to extend *Camper*'s requirements of expert medical or scientific proof and serious or severe injury to all negligence cases where emotional damages are sought. Specifically, the Court noted that "[t]he special proof requirements in Camper are a unique safeguard to ensure the reliability of 'stand-alone' negligent infliction of emotional distress claims." While the nature of "stand-alone" emotional injuries creates a risk of fraudulent claims, that risk is reduced "however, in a case in which a claim for emotional injury damages is one of multiple claims for damages." "When emotional damages are a 'parasitic' consequence of negligent conduct that results in multiple types of damages, there is no need to impose special pleading or proof requirements that apply to 'stand-alone' emotional distress claims."

*Id.* at 38 (alteration in original) (internal citations omitted) (citing *Est. of Amos v. Vanderbilt*

*Univ.*, 62 S.W.3d 133, 134-37 (Tenn. 2001)).

Relying on that discussion in *Demetre*, Plaintiffs argue that their emotional distress

claims do not stand alone because they assert various causes of action with multiple damages,

including emotional distress, and that they only included intentional and negligent infliction of

emotional distress claims "out of abundance of caution." (Pls.' Resp. Mot. Partial Summ. J. 20).

Defendants' briefing does not address how *Osborne* or *Demetre* apply to this case. (*See* Defs.'

Mot. Partial Summ. J. 11-12; Defs.' Reply Mot. Partial Summ. J.). Accordingly, Defendants

have failed to demonstrate that they are entitled to judgment as a matter of law, and summary

judgment is denied as to the intentional and negligent infliction of emotional distress claims. *See*

*Getachew v. Columbus City Schs.*, No. 2:11-CV-861, 2012 WL 748783, at *1 (S.D. Ohio Mar. 8,

2012) ("The moving party has the burden of proving the absence of a genuine dispute and its

entitlement to summary judgment as a matter of law." (citing *Celotex Corp.*, 477 U.S. at 323));

*Harness v. Anderson Cnty.*, No. 3:18-CV-100, 2019 WL 5269095, at *7 (E.D. Tenn. Oct. 17,

2019) (denying summary judgment where the moving party failed to show that it was entitled to judgment as a matter of law).

### E. Defendants' Motions in Limine (DN 90-93)

#### 1. *Standard of Review*

"A motion in limine is 'any motion, whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered.'" *Louzon v. Ford Motor Co.*, 718 F.3d 556, 561 (6th Cir. 2013) (quoting *Luce v. United States*, 469 U.S. 38, 40 (1984)). The purpose of a motion in limine is to "narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." *Id.* (quoting *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1069 (3d Cir. 1990)). "It is often difficult to resolve evidentiary objections outside the context of trial, and Courts will exclude evidence on a motion in limine only when the challenged evidence is clearly inadmissible." *Lotz v. Steak N Shake, Inc.*, No. 5:19-277-DCR, 2021 WL 2270353, at *1 (E.D. Ky. June 3, 2021) (citations omitted). Rulings on motions in limine are preliminary and entirely based on the discretion of the district court, which can later change its rulings. *United States v. Yannott*, 42 F.3d 999, 1007 (6th Cir. 1994).[14]

#### 2. *Physical Injuries (DN 90)*

Defendants contend that Plaintiffs should be prohibited from testifying that they have suffered physical injuries caused by the Compressor Station because there is no evidence that they have been injured and no expert testimony that the Compressor Station caused their alleged injuries. (Defs.' Mot. Lim. Physical Injuries 1-3, DN 90). Plaintiffs respond that they have sent Defendants the Bracketts' medical records, in which Mark Brackett reported that he had tinnitus

---

[14] Plaintiffs argue that Defendants' motions in limine are premature because Defendants submitted them while they had pending dispositive motions. (Pls.' Resp. Defs.' Mot. Lim. Physical Injuries 1-2, DN 94). Considering the motions early, however, will serve their purpose and help the parties develop their trial strategies.

and allergies from the Compressor Station.[15]  (Pls.' Resp. Defs.' Mot. Lim. Physical Injuries 3-5).  Plaintiffs argue that the cause of Mark Brackett's tinnitus and allergies is obvious enough that he, a layperson, can testify to it.  (Pls.' Resp. Defs.' Mot. Lim. Physical Injuries 4-5).

"Under Kentucky law, an expert, or another form of medical proof, is generally required to establish that an incident is the legal cause of a medical injury."  *Chancellor v. Church & Dwight Co.*, No. 5:20-CV-00145-TBR, 2021 WL 4524177, at *2 (W.D. Ky. Oct. 4, 2021) (citing *Lacefield v. LG Elecs., Inc.*, No. 3:06-12-KKC, 2008 WL 544472, at *3 (E.D. Ky. Feb. 26, 2008)).  A layman's exception to the rule, however, applies when "causation is so apparent that lay members of the jury could easily determine whether and to what extent the defendant's conduct caused the plaintiff's injuries . . . ."  *Id.* (quoting *Auto-Owners Ins. v. Aspas*, No. 3:16-CV-189-DJH-RSE, 2018 WL 4643190, at *3 (W.D. Ky. Sept. 27, 2018).  That is rarely the case when the injury has multiple potential causes.  *Id.* (collecting cases).  Because of the multiple potential causes for tinnitus and allergies, causation is outside the bounds of permissible lay testimony, and Mark Brackett may not testify to it.[16]  *See Lacefield*, 2008 WL 544472, at *1, *4 (requiring expert testimony that the plaintiff's tinnitus was caused by the volume on a cell phone, where he experienced immediate pain and discomfort when the cell phone rang in his ear); *Manuel v. EMT-P Anthony Higgins*, No. 5:20-CV-127-KKC-MAS, 2023 WL 6134887, at *1, *6

---

[15] Plaintiffs' argument is that Mark Brackett can testify to causation, but they also state that "Mr. Brackett has reported to his doctor that he suffers from 'allergy conditions' and 'tinnitus' which his doctor reports were attributable to the odor and noises caused by the Defendant's compressor station."  (Pls.' Resp. Defs.' Mot. Lim. Physical Injuries 4-5).  Mark Brackett's medical records do not appear to be in the record, and it is unclear from Plaintiffs' briefing whether, when, or how Mark Brackett's doctor "report[ed]" that the Compressor Station caused his conditions.  (Pls.' Resp. Defs.' Mot. Lim. Physical Injuries 1-5).

[16] To the extent Defendants contend that Plaintiffs should be prohibited from testifying about other physical conditions, the Court defers ruling on those issues until trial.  *See Momeni-Kuric v. Metro. Prop. & Cas. Ins. Co.*, No. 3:18-CV-00197-RGJ, 2019 WL 3416677, at *4 (W.D. Ky. July 29, 2019) (declining to consider a similar argument before trial because "there are many circumstances in which a lay witness may testify about their own injuries . . . .").

(E.D. Ky. Aug. 16, 2023) (explaining that expert testimony was required to prove that the plaintiff had a sulfur allergy and that his skin reaction was caused by a sulfur-based medication administered by the defendant), *report and recommendation adopted sub nom. Manuel v. Higgins*, No. 5:20-CV-127-KKC-MAS, 2023 WL 6131616 (E.D. Ky. Sept. 19, 2023); Fed. R. Evid. 701.

### 3. *Inability to Invite Family and Friends to Their Home (DN 91)*

Defendants sent Plaintiffs interrogatories requesting identification of people who have visited their properties in the past five years, their contact information, and whether they noticed an odor or noise while visiting. (Defs.' Mot. Lim. Family & Friends Exs. 1-2, DN 91-1, 91-2). On May 11, 2023, Plaintiffs provided lists of dozens of visitors and their contact information but did not note whether they noticed an odor or noise, which Defendants apparently assumed meant that none of the visitors ever noticed an odor or noise. (Defs.' Mot. Lim. Family & Friends Exs. 1-2). On January 8, 2024, Defendants filed this motion to request that Plaintiffs be prohibited from testifying or calling witnesses to testify that the odor and noise allegedly emanating from the Compressor Station has prevented them from inviting family and friends to their home. (Defs.' Mot. Lim. Family & Friends 2-3, DN 91). Defendants insist that because none of the guests noticed an odor or noise, their testimony is irrelevant, and Plaintiffs "should not be permitted to testify in direct contradiction to their own discovery responses." (Defs.' Mot. Lim. Family & Friends 3). Plaintiffs respond that Defendants have failed to demonstrate that the testimony is irrelevant because they never contacted or deposed the visitors, who may have noticed an odor or noise. (Pls.' Resp. Defs.' Mot. Lim. Family & Friends 3, DN 95). Defendants contend that Plaintiffs had a duty to fully responded to their interrogatories. (Defs.' Reply Mot. Lim. 3-5, DN 100).

Defendants have plainly failed to prove that the challenged evidence is "clearly inadmissible." *Lotz*, 2021 WL 2270353, at *1. Moreover, it is doubtful that a motion in limine is the appropriate method to resolve this dispute. *Compare United Propane Gas, Inc. v. Pincelli & Assocs., Inc.*, No. 5:13-CV-190-TBR, 2018 WL 6533341, at *1 (W.D. Ky. Dec. 12, 2018) ("Motions in limine provided in advance of trial are appropriate if they eliminate evidence that has no legitimate use at trial for any purpose."), *with Roxane Lab'ys, Inc. v. Abbott Lab'ys*, No. 2:12-CV-312, 2013 WL 4719045, at *3 (S.D. Ohio Sept. 3, 2013) (evaluating the sufficiency of interrogatory responses on a motion to compel). Indeed, each of the cases Defendants cite concern motions for sanctions for violating discovery rules or motions to compel discovery. *See, e.g.*, *Shulin v. Werner Enters., Inc.*, No. 1:15CV87, 2017 WL 10379225, at *1 (N.D.W. Va. Aug. 11, 2017); *Martinez v. Roberts Sinto Corp.*, No. 21-03009-CV-S-DPR, 2023 WL 2695112, at *1 (W.D. Mo. Mar. 29, 2023); *Nat'l Acad. of Recording Arts & Scis., Inc. v. On Point Events, LP*, 256 F.R.D. 678, 679 (C.D. Cal. 2009). Accordingly, Defendants' motion in limine regarding Plaintiffs' ability to invite family and friends to their properties is denied.

### 4. *Source of Odors (DN 92)*

Defendants argue that Plaintiffs should be prohibited from offering evidence or testimony that the Compressor Station is the source of the odors or VOCs because Plaintiffs have insufficient evidence to prove it. (Defs' Mot. Lim. Source of Odors 1-2, DN 92). This is a repackaged argument from Defendants' motions to exclude and for partial summary judgment and is addressed above, so Defendants' motion is denied. (*See* Defs.' Mot. Exclude Haynes 3-5; Defs.' Mot. Partial Summ. J. 1-4; Defs.' Reply Mot. Partial Summ. J. 3-9); *Porter v. AAR Aircraft Servs.*, Inc., 790 F. App'x 708, 713 (6th Cir. 2019) ("[C]ourts generally condemn the use

of a motion in limine to litigate or relitigate matters that should be resolved via a motion to dismiss or a summary judgment motion." (citing *Louzon*, 718 F.3d at 561)).

> **5.** ***Volatile Organic Compounds (DN 93)***

Defendants request that Coomer be prohibited from testifying or offering evidence that VOCs are or were detectable on his property. (Defs.' Mot. Lim. Volatile Organic Compounds 1-2, DN 93). Nothing in the record suggests that Coomer intends to do so. (*See* Pls.' Resp. Defs.' Mot. Lim. Volatile Organic Compounds 3, DN 97 (noting the same)). Accordingly, the motion is denied as premature. *See Crigger v. McIntosh*, 254 F. Supp. 3d 891, 901 (E.D. Ky. 2017) (denying a motion in limine as premature where "there is no indication that the plaintiff will attempt to offer such evidence during trial."); *Donathan v. Orthopaedic & Sports Med. Clinic, PLLC*, No. 4:07-CV-18, 2009 WL 3584263, at *23 (E.D. Tenn. Oct. 26, 2009) (noting that consideration of an issue in a motion in limine was premature because it was "dependent on witnesses' testimony.").

### III.   <u>CONCLUSION</u>

For the foregoing reasons, **IT IS HEREBY ORDERED** as follows:

1.   Defendants' Partial Motion to Dismiss or, in the Alternative, Motion for Partial Summary Judgment (DN 70) is **DENIED**.

2.   Defendants' Motion for Partial Summary Judgment (DN 71) is **GRANTED IN PART** and **DENIED IN PART**.

3.   Plaintiffs' Motion for Leave to File a Sur-Reply (DN 82) is **DENIED**.

4.   Defendants' Motion to Exclude Plaintiffs' Expert Erin Haynes (DN 84) is **DENIED**.

5.      Defendants' Motion in Limine Regarding Plaintiffs' Physical Injuries (DN 90) is **GRANTED IN PART**.

6.      Defendants' Motion in Limine Regarding Plaintiffs' Inability to Invite Family and Friends to Their Home (DN 91) is **DENIED**.

7.      Defendants' Motion in Limine Regarding the Source of Odors (DN 92) is **DENIED**.

8.      Defendants' Motion in Limine Regarding Volatile Organic Compounds (DN 93) is **DENIED**.

Greg N. Stivers, Chief Judge
United States District Court

June 27, 2024

cc:      counsel of record